[No. F055868, F056467. Fifth Dist. Jan. 28, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
BRIAN CLIFFORD BEATY, Defendant and Appellant.

**COUNSEL**

Michael Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Peter H. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WISEMAN, J.**—We consider whether an authorized medical marijuana user is, based on that fact alone, unamenable for drug recovery treatment and therefore not an appropriate candidate for Proposition 36[1] probation. Although the medical use of marijuana may be considered by the court in establishing the terms and conditions of probation under Prop. 36 and in crafting the treatment to be provided, we conclude the authorized use of medical marijuana does not *by itself* make a nonviolent drug offender unamenable to the treatment mandated by Prop. 36.

## *PROCEDURAL AND FACTUAL HISTORIES*

In 2007, appellant Brian Clifford Beaty was convicted of transporting and possessing methamphetamine in violation of Health and Safety Code[2] sections 11379, subdivision (a) and 11377, subdivision (a). At sentencing, the trial court suspended imposition of sentence and placed Beaty on Prop. 36 probation for a period of five years. The terms of Beaty's probation included the usual restrictions on the use of any unauthorized drugs, narcotics, or controlled substances and an order that he not use any controlled substance without a prescription from a medical doctor. Beaty was also ordered to enroll in, participate in, and complete a drug treatment program.

As the result of a motorcycle accident in 1998, Beaty is disabled. He suffers from chronic pain, slurred speech, and slow reaction times. At some point, Beaty inquired about the possibility of using marijuana for pain relief and to help with anxiety and stress. He was referred to Dr. Fry who prescribed the use of marijuana for pain relief, appetite control, anxiety management, and blood pressure reduction. Beaty meets with Dr. Fry once a year for a medical evaluation and a renewal of the marijuana prescription. Beaty admits that he uses marijuana on a daily basis.

Beaty also testified that he was referred to Dr. Fry by "[local physician] Nick Dobler," his treating doctor. Later Beaty explained that, although Nick Dobler is not a physician, he works under Dr. Hoenes. A check of California's Department of Consumer Affairs Web site indicates that Nicholas Dobler is a physician's assistant practicing in Tuolumne County.

---

[1] Proposition 36 was passed by the electorate as the Substance Abuse and Crime Prevention Act of 2000. The proposition is codified in Penal Code sections 1210, 1210.1, 3063.1, and Health and Safety Code section 11999.4 et seq. It will be referred to here as "Prop. 36."

[2] All further statutory references are to the Health and Safety Code, unless otherwise set forth.

(<http://www2.dca.ca.gov/pls/wllpub/WLLQRYNA$LCEV2.QueryView? P_LICENSE_ NUMBER=10641&P_LTE_ID=884> [as of Jan. 28, 2010].) Apparently it is Dobler whom Beaty sees on a regular basis. His last visit to Dobler was two weeks prior to the hearing.

When placed on Prop. 36 probation, Beaty told his probation officer that he had the medical marijuana prescription and about his use of marijuana. The officer told Beaty that all his medications must be approved by the Prop. 36 team. He was also advised that he could not use marijuana, even though prescribed, while on Prop. 36 probation. Beaty was counseled by his attorney that his use was legal, so he continued to use marijuana on a daily basis for medicinal purposes. Not surprisingly, Beaty tested positive for marijuana each time he was tested.

In November 2007, the dirty tests were the basis for a five-count petition alleging that Beaty had violated his probation by testing positive five times. At the subsequent probation revocation hearing, the court found that the allegations were true and that Beaty had tested positive as alleged, but concluded that Beaty had an affirmative defense because he had a prescription for the medical use of marijuana and an established relationship with the prescribing physician. The court modified the terms of Beaty's probation and ordered that he meet with probation to review guidelines for the medical marijuana program. The court also ordered that Beaty comply with probation's policy concerning the use of medical marijuana.

In January 2008, the probation department filed a second petition alleging that Beaty had violated probation by failing to appear for a scheduled group meeting at his treatment service provider. Beaty admitted this violation and was ordered to perform eight hours of community service. This was the only meeting he missed.

In February 2008, Beaty's probation officer, Anthony Johnson, met with him to go over the terms of the court's medical-marijuana-use policy. Beaty was asked by Johnson to sign the policy; however, Beaty refused to do so. The policy placed stringent conditions on Beaty's use of medical marijuana, including that he obtain verification every three months from a physician of his continued need for marijuana; that he not be in possession of more than six mature plants or 12 immature plants and up to one-half pound of dried marijuana; that he only buy his medical marijuana from a licensed reputable business; and that once a THC (the active ingredient of marijuana) inhaler

becomes available, no other form of medical marijuana be used. These restrictions are more restrictive than those found in Proposition 215[3] and its enabling statutes.[4]

In May 2008, the probation department filed a third petition alleging that Beaty had violated his terms of probation by (1) failing to sign the required county policy for medical use of marijuana, and (2) failing to provide a quarterly verification of the physician's order for use of marijuana for medicinal purposes. Additionally, the petition as amended added a third allegation, that Beaty was unamenable for treatment under Prop. 36, and asked that he be placed on formal probation.

At the probation revocation hearing, the trial court sustained only the third allegation, finding Beaty unamenable for treatment based on the testimony of two experts, Beaty's drug abuse counselor and the clinical director of the treatment program in which Beaty was enrolled. Both opined that the use of marijuana was inconsistent with the goal of abstinence, and that by using marijuana on a daily basis, Beaty was under the influence of a mind-altering substance that posed a conflict of interest in substance abuse group counseling sessions. Johnson testified that he believed Beaty's marijuana use complied with the physician's recommendation and that Beaty had provided the annual certification required under Prop. 215. Beaty was not allowed to participate in group sessions because Beaty's drug counselor, Don Merchant, believed Beaty's daily use equated to Beaty being under the influence of marijuana at all times. Individuals under the influence are not allowed to participate in recovery groups.

The court acknowledged the tension between the intent of Prop. 36 that drug abusers recover from drug use, and the intent of Prop. 215 that individuals not suffer penal consequences for the medicinal use of marijuana. It found that Beaty was unamenable to treatment because, for someone with a past history of using methamphetamine, the daily use of marijuana poses a danger of future criminality and future use of methamphetamine. The court

---

[3] Proposition 215, known as the Compassionate Use Act, was passed by voters in 1996 and is codified at section 11362.5. We will refer to it here as "Prop. 215."

[4] The Legislature passed the Medical Marijuana Program in 2003 (Stats. 2003, ch. 875, § 1) to clarify the scope and facilitate the prompt identification of qualified patients, to promote uniform and consistent application of Prop. 215, and to facilitate marijuana access for qualified patients. (*People v. Urziceanu* (2005) 132 Cal.App.4th 747, 783 [33 Cal.Rptr.3d 859].) The constitutionality of the quantity restrictions that are a part of the Medical Marijuana Program was addressed in *People v. Kelly* (2010) 47 Cal.4th 1008 [103 Cal.Rptr.3d 733, 222 P.3d 186]. We are unaware of any case addressing the legality of any quantitative limit placed on a Prop. 36 probationer.

observed that Prop. 36's purpose is to provide treatment in order for a person convicted of a nonviolent drug offense to "build a solid foundation in recovery so they can remain clean and sober and not continue their use."

The court revoked Beaty's Prop. 36 probation and sentenced him to a term of 30 days in county jail, which was then stayed during the pending appeal. The order was modified on September 3, 2008, to impose a fine of $1,050. Both orders have been appealed (case Nos. F055868 and F056467). The matters were consolidated for all purposes by order of this court dated December 11, 2008.

## *DISCUSSION*

### I. *Revocation of Beaty's Prop. 36 probation*

Beaty raises a number of arguments all centered on a single issue: Can the authorized use of medical marijuana serve as the basis for terminating Prop. 36 probation based on a finding that the defendant authorized to use marijuana under Prop. 215 is unamenable to drug treatment? This is an issue of first impression. If not, are there restrictions that can be placed on Prop. 36 defendants, and what does the record need to contain in order to support those limits?

### A. *Court's discretion to revoke probation under Prop. 36*

■ We begin with the basic principle that trial courts have very broad discretion in determining whether a probationer has violated the terms of his or her probation. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443 [272 Cal.Rptr. 613, 795 P.2d 783].) Generally, probation conditions may regulate conduct not itself criminal so long as they are reasonably related to a defendant's crime or to future criminality. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120 [43 Cal.Rptr.2d 681, 899 P.2d 67].) The trial court's discretion is not, however, without limit, but is subject to the legal principles that govern in each case. (*People v. Eubanks* (1996) 14 Cal.4th 580, 595 [59 Cal.Rptr.2d 200, 927 P.2d 310]; *People v. Russel* (1968) 69 Cal.2d 187 [70 Cal.Rptr. 210, 443 P.2d 794].) A trial court abuses its discretion when it exceeds the bounds of reason, all of the circumstances before it being considered. (*People v. Russel, supra,* at p. 194.)

■ Beaty's probation is governed by Prop. 36, which mandates probation and diversion to a drug treatment program for those offenders whose offenses are confined to using, possessing, or transporting a controlled substance. Its provisions provide for an alternative sentencing scheme, an exception to the punishment normally imposed for certain offenses. (*People v. Canty* (2004) 32

Cal.4th 1266, 1275 [14 Cal.Rptr.3d 1, 90 P.3d 1168]; *In re Varnell* (2003) 30 Cal.4th 1132, 1136 [135 Cal.Rptr.2d 619, 70 P.3d 1037].) Penal Code section 1210.1, subdivision (a), provides that, subject to certain exceptions, "any person convicted of a nonviolent drug possession offense shall receive probation. As a condition of probation the court shall require participation in and completion of an appropriate drug treatment program." Penal Code section 1210.1, subdivision (a), also provides that a qualifying defendant may not be incarcerated as an additional term of probation. (*People v. Canty, supra*, at pp. 1272–1273.) Prop. 36 emphasizes treatment, not punishment, and applies only to those convicted of simple drug possession. (*People v. Superior Court (Turner)* (2002) 97 Cal.App.4th 1222, 1226 [119 Cal.Rptr.2d 170].)

 When a Prop. 36 defendant violates probation, Penal Code section 1210.1 limits the court's response, recognizing that "drug abusers often initially falter in their recovery," and "[giving] offenders several chances at probation before permitting a court to impose jail time." (*In re Taylor* (2003) 105 Cal.App.4th 1394, 1397 [130 Cal.Rptr.2d 554].) Penal Code section 1210.1, subdivision (f)(3), provides for escalating sanctions for drug-related violations of probation. The trial court's authority to revoke probation under subdivision (f)(2) only arises under a narrowly circumscribed set of conditions. (*In re Mehdizadeh* (2003) 105 Cal.App.4th 995, 1006 [130 Cal.Rptr.2d 98].) A court's discretion in Prop. 36 cases must be exercised consistent with the limiting language of Penal Code section 1210.1, subdivision (f), which states the necessary findings to be made for each violation of probation. (*In re Taylor, supra*, 105 Cal.App.4th at pp. 1398–1399; *People v. Davis* (2003) 104 Cal.App.4th 1443, 1449 [129 Cal.Rptr.2d 48] [conditions under which court can revoke Prop. 36 probation, and sanctions court may impose, are limited by enactment]; *People v. Murillo* (2002) 102 Cal.App.4th 1414, 1421 [126 Cal.Rptr.2d 358].)

The first violation cannot result in revocation of probation unless the People prove by a preponderance of the evidence that the defendant is a threat to the safety of others.[5] (Pen. Code, § 1210.1, subd. (f)(3)(A).) Instead, the trial court must continue with the current drug treatment program or intensify or alter the drug treatment plan. For a second violation there can be no revocation unless it is proved the defendant is a threat to the safety of others or that the defendant is unamenable to drug treatment. (Pen. Code, § 1210.1, subd. (f)(3)(B); *In re Mehdizadeh, supra*, 105 Cal.App.4th at p. 1006.)

---

[5] Violations of non-drug-related conditions of probation are treated differently, with harsher consequences. (Pen. Code, § 1210.1, subd. (f)(3)(A), (2).) There is no contention here that any of the violations alleged or sustained were nondrug related.

The first petition in this case alleging a violation of probation was not sustained because the court found that Beaty had established he was authorized under Prop. 215 to use marijuana for medicinal purposes. This finding is important to our review since it means there is no issue with respect to whether Beaty has proven his medical marijuana defense.

The second petition resulted in a sustained finding that Beaty violated probation, but it was of minor significance (missing a single group meeting), and a penalty was imposed. There is no contention on appeal that the second petition has any bearing on the court's finding on the third petition. It is also significant that the court sustained the third petition on the ground that Beaty was unamenable to treatment—not that he violated any term or condition of his probation.

### B. *Relationship to Prop. 215*

The finding that Beaty is unamenable to treatment rests entirely on Beaty's marijuana use and the opinion of experts that complete abstinence from drugs is required for recovery. The experts opined that Beaty could not continue to use medical marijuana and complete his drug treatment program. Merchant testified that Beaty could not be in a group because, given Beaty's admission that he was using marijuana daily, Merchant believed Beaty was always under the influence of marijuana. Group members who are under the influence of a controlled substance are barred from participating in the group. Merchant acknowledged that Beaty did not smell of marijuana, did not appear to be under the influence at group sessions, and did not talk about using marijuana during group sessions. Merchant testified that being under the influence of any type of narcotic was inappropriate in a drug treatment group and that, in his opinion, someone with a medical marijuana prescription should *never* participate in a Prop. 36 program. He also verified that Beaty was fully compliant with the program and had done everything asked of him.

Karen Bachtelle, the clinical supervisor of the treatment program, testified that in order to recover from drug addiction, a client must be willing to get off *all* mind-altering substances. She opined that Beaty's use of marijuana for medicinal purposes would interfere with his recovery. When asked how the treatment program would address use of a prescription drug, Bachtelle testified that the program would contact the prescribing physician and explore whether nonnarcotic drugs would be available as a substitute. She admitted, however, that no one had contacted Beaty's physician to ask these types of questions. Bachtelle testified extensively about why smoking marijuana was not an effective way to deliver medication because there is no control over the dosage, strength, or usage of marijuana. She also opined that Beaty's daily use of marijuana was abuse, although she acknowledged that she had

not talked to Beaty's physician or looked at Beaty's drug tests to determine the amount of marijuana he was using and whether it was appropriate for his needs. Bachtelle also admitted that the program's conclusions about whether Beaty had improved during treatment were colored by his marijuana use and its perceived interference with recovery from drug addiction.

■ Since Beaty's use of marijuana is legally authorized by Prop. 215, we also must consider the language and intent of this proposition. Prop. 215 has proved to be controversial as courts have tried to reconcile the proposition's intent with a body of criminal law that considers marijuana to be a serious drug subject to abuse and likely to lead to the use of more dangerous drugs. Notwithstanding this controversy, subdivision (d) of section 11362.5 provides: "Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." Section 11362.795, subdivision (a)(1), anticipates that a probationer might use medical marijuana and provides a mechanism for court supervision of the use of marijuana within the context of probation. Section 11362.795, subdivision (b)(1)–(4), addresses use by a parolee.

The Court of Appeal in *People v. Urziceanu, supra,* 132 Cal.App.4th at page 785, observed that "[t]his new law represents a dramatic change in the prohibitions on the use, distribution, and cultivation of marijuana for persons who are qualified patients or primary caregivers . . . ." Prop. 215 and its enabling statutes require new thinking on the use of marijuana by people with medical needs, and ensure "that seriously ill Californians have the right to obtain and use marijuana for medical purposes" upon the recommendation of a physician. (§ 11362.5, subd. (b)(1)(A).) The section applies to "any . . . illness for which marijuana provides relief." (*Ibid.*) Under the statutory scheme, individuals using marijuana under the recommendation of a physician "are not subject to criminal prosecution or sanction." (§ 11362.5, subd. (b)(1)(B).)

C. *Unamenability finding*

In this legal framework we now turn to the issues presented. In framing its order, the trial court asked, "What do you do with someone who is addicted to a drug based on a recommendation of [the] Compassionate Use Act, and on the same hand has been convicted of a felony of a different drug which is illegal and is ordered into a treatment and recovery [program]?" The trial court observed that, because nobody knew what to do with the medical marijuana issue, the drug treatment portion of Beaty's Prop. 36 program was

eliminated. Based on the drug treatment program's refusal to allow Beaty to participate in group sessions while using marijuana regularly, the court concluded that Beaty was unamenable to treatment. In essence, the court's ruling equates to a finding that, as a matter of law, medicinal use of marijuana alone is sufficient to render an individual unamenable for treatment in a Prop. 36 drug treatment program. We conclude this conclusion is not supported by the law or the evidence and impermissibly defers a legal conclusion to the drug treatment program.

In criminal cases, the California Supreme Court has analogized the use of marijuana pursuant to section 11362.5 to the use of a prescription drug. (*People v. Mower* (2002) 28 Cal.4th 457, 482 [122 Cal.Rptr.2d 326, 49 P.3d 1067] ["section 11362.5(d), the possession and cultivation of marijuana is no more criminal—so long as its conditions are satisfied—than the possession and acquisition of any prescription drug with a physician's prescription"]; see also *People v. Tilehkooh* (2003) 113 Cal.App.4th 1433, 1437 [7 Cal.Rptr.3d 226]; *People v. Hochanadel* (2009) 176 Cal.App.4th 997, 1007 [98 Cal.Rptr.3d 347]; but see *Ross v. RagingWire Telecommunications, Inc.* (2008) 42 Cal.4th 920, 926 [70 Cal.Rptr.3d 382, 174 P.3d 200] [court rejects employee's claim that Prop. 215 gave marijuana same status as any legal prescription drug in civil cases; court acknowledges state law cannot completely legalize marijuana for medical purposes because drug remains illegal under federal law even for medical users].)

Drawing from the Supreme Court's analogy, we pose this example: Individuals with attention deficit disorder routinely use the prescribed drug Adderall, an addictive, mind-altering stimulant, on a daily basis for a period of years in order to manage their disorder. Like medicinal marijuana, Adderall is a controlled substance (a derivative of amphetamine, and a schedule II drug) and must be used under a doctor's supervision and on a demonstrated basis of need. It is, however, often abused. (<http://www.webmd.com/add-adhd/guide/adhd-medical-treatment> [as of Jan. 28, 2010]; <http://www.webmd.com/drugs/drug-63163-Adderall+Oral.aspx?drugid=63163&drugname=Adderall+Oral> [as of Jan. 28, 2010]; <http://adhd.emedtv.com/adderall/adderall-abuse.html> [as of Jan. 28, 2010]; 21 C.F.R. § 1308.12 (2009); 73 Fed.Reg. 36722, 36723 (June 27, 2008) [schedule II–V substances have accepted medical uses but also have potential for abuse and psychological and physical dependence; they are available only under prescription written by practitioner licensed by state and registered with federal Drug Enforcement Administration].)

If the expert testimony in this case is taken literally, any individual using Adderall on a daily basis would be unamenable for Prop. 36 treatment because the drug is mind altering, habit forming, and often used daily over a period of years. Based on the understanding of the experts in this case, an

individual using Adderall arguably would be considered constantly under its influence and would not be allowed to participate in a recovery group. Further, any person using Adderall under the authority of a medical doctor would be unamenable to treatment under the trial court's analysis because one cannot be in a recovery program and use any drug on a regular basis. We conclude this approach interferes with the intent and spirit of Props. 36 and 215 and violates the basic principle that conditions of probation are to be reasonably related to the rehabilitative purposes of probation generally.

■ There are controlled prescribed medications needed on a regular basis to address recurrent medical issues. Adderall is but one example. Beaty presents another—the recognized role of methadone in drug treatment programs. Although marijuana is not a recognized narcotic-replacement therapy, the reference in the statute identifying an authorized use of a controlled substance provides another example of authorized legal use of a controlled substance that cannot be used to prevent successful completion of a drug treatment program. (Pen. Code, § 1210, subd. (c) [completion of treatment shall not require cessation of narcotic-replacement therapy].)

The trial court also heavily rests its analysis on the expert opinion that individuals must abstain from the use of all drugs in order to recover from their addiction. The court noted that there is a link between the use of one drug and the use of another. While this may be true in the context of abuse of a single drug or alcohol, given the passage of Prop. 215, this statement cannot be deemed true when considering the authorized use of marijuana for medicinal purposes. Recovery from addiction cannot mean that patients must refrain from the use of all narcotics, even when recommended by their physicians for verifiable medical purposes. We take judicial notice that recovery from addiction is a lifelong process. (Evid. Code, § 451, subd. (f); *Post v. Prati* (1979) 90 Cal.App.3d 626, 633 [153 Cal.Rptr. 511].) Although Bachtelle testified that marijuana is ineffective medicine for addressing Beaty's physical ailments, Bachtelle is not a physician. Her conclusions that marijuana is not an effective medicine and cannot be regulated with respect to dosage, or that marijuana use will likely lead to more addictive drug use in the future, are conclusions that were rejected by the electorate in passing Prop. 215. We have held that "the question of whether the medical use of marijuana is appropriate for a patient's illness is a determination to be made by a physician." (*People v. Spark* (2004) 121 Cal.App.4th 259, 268 [16 Cal.Rptr.3d 840].) There is no requirement under Prop. 215 that a doctor's recommendation approve the use of a specific amount of marijuana in order for the patient to present a defense under Prop. 215. (*People v. Windus* (2008) 165 Cal.App.4th 634, 642 [81 Cal.Rptr.3d 227].)

■ We recognize that Prop. 36 requires the successful completion of a drug treatment program and that this means a defendant must not only show

that he or she has completed the prescribed course of drug treatment as recommended by the treatment provider and ordered by the court, but also must show that there is reasonable cause to believe that the defendant will not abuse controlled substances in ·the future. Full participation is not always enough. (See *People v. Hinkel* (2005) 125 Cal.App.4th 845, 848 [22 Cal.Rptr.3d 895].) However, we agree with Beaty that there is no requirement in Prop. 36 that a defendant recover from an addiction that has not been factually established, or that a defendant abstain from all controlled substances, even those for which an established medical need exists and for which a physician has legally prescribed.

The experts in this case testified in essence that it did not matter what the nature of Beaty's original drug offense or problem was, or what the circumstances of his legal marijuana use were. He was unamenable to treatment because legal medicinal use of marijuana (or any other narcotic) does not comport with the treatment program's view of recovery, recovery meaning abstinence. We conclude the treatment program's position is unreasonable and not supported by the statute. First, the statute requires only that there be reasonable cause to believe that the defendant will not *abuse* controlled substances in the future. (Pen. Code, § 1210, subd. (c).)

Second, serious pain often requires medication, and it is generally understood that pain is often treated with codeine or other narcotic-based prescription medicine. We do not accept the program's position that someone suffering from chronic pain must forego all medicinal assistance in order to participate in and complete a Prop. 36 recovery program. Bachtelle testified that the program is able to adjust for patients using prescription narcotics, implicitly other than marijuana and other than for a chronic condition.

The probation department's own policy is inconsistent with the court's findings and with the expert testimony that a medical marijuana user cannot participate in a Prop. 36 drug program. The probation department's policy included a number of requirements addressing how a probationer using medical marijuana is to act during group sessions and while involved in a drug treatment program. Under the policy, the treatment provider is to create an alternative treatment plan for medical marijuana users if the medical marijuana use is "approved by the court." Apparently at least one other county (Sacramento) has adopted a similar policy. As a result, we presume at least one other county in this state believes the two conflicting tensions identified by the trial court can be reconciled in order to structure a Prop. 36 program

so that it accommodates medical marijuana users. There is no need for a policy addressing use of marijuana for medicinal purposes in Prop. 36 programs if anyone using marijuana for medicinal purposes is unamenable for treatment in a drug recovery program.

■ We also note that the experts testifying in this case represent the position taken by only one drug treatment program in a virtual sea of drug treatment programs statewide. Penal Code section 1210.1, subdivision (d)(1), states, "If at any point during the course of drug treatment the treatment provider notifies the probation department and the court that the defendant is unamenable to the drug treatment being provided, but may be amenable to other drug treatments or related programs, the probation department may move the court to modify the terms of probation, or on its own motion, the court may modify the terms of probation after a hearing to ensure that the defendant receives the alternative drug treatment or program." This section implies that not all drug treatment programs will take the same approach to rehabilitation or that there is only one way to reach recovery, contrary to what the experts in this case suggest.

### D. *Other evidentiary support of unamenability finding*

Having concluded that the authorized use of marijuana for medicinal purposes cannot as a matter of law support a finding of unamenability, we turn now to the facts specific to Beaty. Significantly, there is no connection between Beaty's underlying offense and his use of medical marijuana. If Beaty had a history of illegal use or abuse of marijuana, restrictions on the use of marijuana unquestionably would be related to the rehabilitative purposes of Prop. 36. (See *People v. Bianco* (2001) 93 Cal.App.4th 748, 750–751 [113 Cal.Rptr.2d 392] [defendant pled guilty to cultivating marijuana without compliance with Prop. 215; restriction on possession and use of marijuana is reasonably related to rehabilitative purpose of probation].) Or, if Beaty's underlying offense was connected to his marijuana use, for example, by lacing his marijuana with other illegal substances or violating the restrictions of Prop. 215, a restriction on his marijuana use would be permissible as a related legitimate rehabilitative purpose.

There is no substantial evidence, however, that Beaty used marijuana illegally or abused it. While the drug treatment experts might believe that daily use is an abuse of marijuana, there is no medical testimony that Beaty's daily use is an abusive use of medicinal marijuana given his health conditions. There is no evidence that any of the three prosecution witnesses spoke

with Beaty's doctor to determine whether his use was abusive. (See *People v. Wright* (2006) 40 Cal.4th 81, 97 [51 Cal.Rptr.3d 80, 146 P.3d 531] [statutory limits on amount of marijuana that can be possessed were intended to be threshold and not ceiling; amount permissible is governed by medical evidence]; see also *People v. Tilehkooh, supra,* 113 Cal.App.4th at p. 1437 [under Prop. 215, defendant may assert his use of cultivated marijuana for medicinal purposes as defense to criminal sanction of revocation of probation where there is no claim that his conduct endangered others or that he diverted marijuana for nonmedical purposes; probation condition that prohibits lawful use of prescription drug can serve no rehabilitative purpose].)

Nor is there evidence to support a finding that Beaty's marijuana use will lead to future criminality. Bachtelle's testimony that Beaty's marijuana use will interfere with his recovery as an addict, and that use of marijuana will lead to a return to his use of methamphetamine, is flawed in two respects. First, it assumes without evidentiary foundation that Beaty was addicted to methamphetamine. The probation reports in this case establish only that Beaty (1) denied the methamphetamine he possessed was for his use, and (2) admitted use of methamphetamine only in the distant past, while admitting using marijuana and other opiate-type drugs for pain relief. Merchant testified that Beaty said he did not use methamphetamine and that, as a result, Merchant talked to Beaty about finding an alternative medication for marijuana. Merchant also testified that he believed Beaty was being forthright and honest to the best of his ability.

Second, Bachtelle's opinion that Beaty's use of medicinal marijuana would lead to the future use of methamphetamine was not based on any evidence about Beaty's use or needs, but on Bachtelle's own conclusion that medicinal marijuana use leads to illegal drug usage—a conclusion we are unable to accept given the intent of Prop. 215. The argument raises public policy concerns already considered and rejected by the voters.

■ Finally, there is no evidence to suggest that treatment has not proved to be beneficial to Beaty. Penal Code section 1210, subdivision (b), defines drug treatment broadly as including drug education, outpatient services, narcotic-replacement therapy, residential treatment, detoxification services, and aftercare services. Penal Code section 1210.1, subdivision (a), establishes that it is the intent of the Legislature that treatment, including detoxification and residential services, be tailored to the individual needs of offenders with a

goal toward improving completion rates. The section authorizes the court to impose as "a condition of probation, participation in vocational training, family counseling, literacy training and/or community service." Penal Code section 1210, subdivision (b), defines the term " 'drug treatment program' " or " 'drug treatment' " as including "a state licensed or certified community drug treatment program, which may include one or more of the following: drug education, outpatient services, narcotic replacement therapy, residential treatment, detoxification services, and aftercare services." The treatment parameters contained in Prop. 36 are very broad.

Merchant testified that he included in Beaty's treatment plan anger-management and domestic-abuse education due to the conduct leading to Beaty's arrest. Beaty testified that he found these aspects of his treatment to be beneficial. Beaty attended and participated regularly in Alcoholics Anonymous meetings. Beaty acknowledges that he has an alcohol problem that interferes with his relationships with women. Beaty had not tested positive for methamphetamine since his arrest, and Bachtelle admitted that was "harm reduction." In addition, Beaty reported personal growth, and the problems underlying his initial offense were being addressed, at least as identified by him.

Respondent states in its brief that Beaty's marijuana use makes him antagonistic toward treatment, and that he constantly makes references to his medical use of marijuana. Bachtelle testified that Beaty was judged unamenable to treatment by an earlier group counselor because he was under the influence of marijuana and because he had been verbally antagonistic concerning all phases of recovery in a group. Bachtelle also said Beaty made reference to his medical marijuana use and that all clients were aware that he had a marijuana recommendation and used every day. She said this occurred on December 17, 2007, *prior* to Beaty being given the medical-marijuana-use policy and prior to the first petition alleging violation of probation being filed. Merchant, however, testified that Beaty had not said anything about his marijuana use, at least during the more recent groups that Merchant supervised. Merchant said nothing about Beaty being antagonistic toward recovery, other than to state that Beaty was unwilling to give up his medical marijuana usage.

We conclude that the authorized medical use of marijuana cannot as a matter of law render a defendant unamenable for treatment as a Prop. 36

defendant. Since there is insufficient evidence to support a finding that Beaty is personally unamenable to treatment or that Beaty's medical marijuana use means he is in danger of future criminality, we reverse the order revoking Beaty's Prop. 36 probation and remand for further proceedings.

## II. *On remand*

 The trial court correctly identified that the tension between Prop. 36 and Prop. 215 requires a balancing act for the courts, probation departments, and drug treatment programs. Medical use of marijuana, especially in today's drug climate, is not "a sort of 'open sesame' regarding the possession, transportation and sale of marijuana in this state." (*People v. Trippet* (1997) 56 Cal.App.4th 1532, 1546 [66 Cal.Rptr.2d 559].) Therefore, we do *not* suggest that all authorized users of medical marijuana must be allowed to continue their use. However, any restriction of their use must reasonably be related to their specific offense and based on medical evidence addressing their medicinal needs.

A reasonable policy addressing medical marijuana use by Prop. 36 defendants that is consistent with the stated goals of both propositions is unquestionably justified. Further, nothing in Prop. 215 prevents a court from ordering Prop. 36 defendants to comply with a reasonable medical-marijuana-use policy. At a minimum, however, any policy needs to be consistently applied by probation and be clearly communicated to those defendants authorized to use marijuana under the provisions of Prop. 215.

The intent of Prop. 36 is to provide treatment that will "enhance public safety by reducing drug-related crime and preserving jails and prison cells for serious and violent offenders, and to improve public health by reducing drug abuse and drug dependence through proven and effective drug treatment strategies." (Voter Information Guide, Gen. Elec. (Nov. 7, 2000) text of Prop. 36, § 3, subd. (c), p. 66, reprinted in Historical and Statutory Notes, 50D West's Ann. Pen. Code (2004 ed.) foll. § 1210, p. 640.) Successful completion of the treatment program requires that, for the individual defendant, one can safely believe the defendant will not abuse controlled substances in the future. (*People v. Hinkel, supra,* 125 Cal.App.4th at pp. 851–852.) Applying a reasonable policy to the circumstances of any individual Prop. 36 defendant is well within the intent and spirit of Prop. 36 and would not violate the intent and spirit of Prop. 215. We leave to the capable hands of the probation department and the trial court the task of creating and implementing such a policy to handle the individual needs of Prop. 36 defendants who also are qualified medical marijuana users.

## *DISPOSITION*

The order revoking probation is reversed and the matter is remanded for further proceedings.

Vartabedian, Acting P. J., and Gomes, J., concurred.

A petition for a rehearing was denied February 26, 2010, and on February 11, 2010, the opinion was modified to read as printed above.