Filed 10/29/15  Marriage of Hamrick CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of JOE EUGENE HAMRICK and KIMBERLY LYNN HAMRICK. _____ | F069954 |
| | (Stanislaus Super. Ct. No. 401976) |
| JOE EUGENE HAMRICK, Appellant, v. KIMBERLY LYNN HAMRICK, Respondent. | **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Jack M. Jacobson, Judge.

Law Offices of Daniel L. Mitchell and Daniel L. Mitchell for Appellant.

No appearance on behalf of Respondent.

-ooOoo-

This case involves a custody dispute. Appellant Joe Eugene Hamrick[1] contends the trial court erred in denying his request for physical custody of his son, Beau, during the school year.[2] We conclude that Mr. Hamrick's sole contention on appeal lacks merit.

**BACKGROUND FACTS**

On November 7, 2006, Mr. Hamrick petitioned for dissolution of marriage from respondent, Ms. Hamrick, in Stanislaus Superior Court.[3] They had two minor children at the time, Beau (age 3) and James (age 10).

The court granted the parties joint legal custody of the children. Both parties were also granted physical custody, but Ms. Hamrick was designated the primary caretaker and was permitted to relocate the minor children to Oregon over Mr. Hamrick's objection. The order did entitle Mr. Hamrick to several visitations each year.

On February 26, 2009, July 9, 2009, and April 19, 2010, the court held hearings on the issues of custody and visitation. The court found that Mr. Hamrick had presented evidence of "a significant change in circumstances since the Court's decision in 2007 allowing mother to move with the children in Oregon." The court nonetheless found that the best interest of the children was served by maintaining mother as the primary caretaker.

Throughout 2010 and 2011, Mr. Hamrick filed several requests to modify child custody and several orders to show cause against Ms. Hamrick contending that she had acted in contempt of court orders. The orders to show cause were consolidated and heard together.

---

[1] Since the parties share a last name, we will refer to them as Mr. and Ms. Hamrick, respectively.

[2] Beau's mother, respondent Kimberly Lynn Hamrick, has not filed a respondent's brief on appeal.

[3] The background facts before November 2012 are taken largely from our nonpublished opinion in a prior appeal: *Hamrick v. Hamrick* (Nov. 28, 2012, F062903) (*Hamrick I*).

On June 30, 2011, the court acquitted Ms. Hamrick of all contempt allegations. The court then noted that it "needs to do something with regards to … custody." After allowing counsel to state any objections on the record with respect to the contempt acquittals, the court ruled that California was an inconvenient forum with respect to the custody issue pursuant to Family Code section 3427.[4]

A custody order was filed on July 11, 2011, providing that Mr. and Ms. Hamrick shared joint legal and physical custody of the children. The children were to be with Ms. Hamrick except during certain holidays, four-day weekends, several weeks during summer, etc., when they would be with Mr. Hamrick. The order also provided that that the parties "shall keep each other informed of all appointments for the children with all health-care providers."

Mr. Hamrick appealed the trial court's ruling that California was an inconvenient forum under section 3427.

In an opinion dated November 28, 2012, this court reversed the finding that California was an inconvenient forum under section 3427[5] and remanded for further proceedings. (*Hamrick I*, *supra*, F062903.)

On remand, the court set a hearing for March 27, 2013, "to allow for oral argument regarding the court's motion to deem California an inconvenient forum on the issue of child custody and visitation." The court ordered the parties to submit updated

---

[4] All undesignated statutory references are to the Family Code.

[5] Under section 3427, subdivision(a), a court with jurisdiction to make a child custody determination "may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." (§ 3427, subd. (a).) In making this determination, the court must analyze all relevant factors, including considerations such as the length of time the child has resided out of state and the degree of financial hardship to the parties in litigating in one forum over the other. (§ 3427, subd. (b).)

declarations and points and authorities concerning the inconvenient forum analysis under section 3427.  The court permitted Ms. Hamrick to appear by telephone.

Ms. Hamrick did not submit any filings in accordance with the court's order and failed to appear at the March 27, 2013 hearing.  Consequently, at the hearing the court withdrew its own motion to declare California an inconvenient forum.  The court then said that Mr. Hamrick was "free, if he feels it's necessary, to file anything with regards to custody or visitation, to have any matters readdressed with the Court."

In July 2013, Mr. Hamrick filed a request to modify the child custody order from July 11, 2011, to designate him as the primary caretaker of both children.[6]  Mr. Hamrick stated that the children were performing poorly in school, and Ms. Hamrick was unable to "continue to serve as the primary caretaker of the children."

On May 12, 2014, the court held an evidentiary hearing on Mr. Hamrick's request.  The evidentiary hearing focused on Beau because James was no longer a minor at the time of the hearing, which lead the trial court to exclude evidence concerning James.[7]

### EVIDENCE

At the time of the hearing, Beau was just under 11 years old.

*Mr. Hamrick's Testimony*

Beau's Individualized Education Program

Mr. Hamrick testified that he had worked with someone to have an individualized education program (IEP)[8] created for Beau when he was younger.[9]  When Beau was in

---

[6] Mr. Hamrick's request also indicated he would seek a change to child support.

[7] We understand that any change to the existing custody order would not affect James since he is no longer a minor.  But it does not follow that evidence concerning James is not relevant to how the court should treat Beau.  James's difficulties in school are arguably relevant to whether Ms. Hamrick is adequately overseeing her children's education.  However, Mr. Hamrick does not raise this as an issue on appeal.

[8] "An 'individualized education program' is a written statement of a child's present level of educational performance, including, among other information, how the disability affects the child's participation in appropriate activities, a statement of

4.

third grade, "they"[10] considered removing Beau from the IEP. But Mr. Hamrick requested that Beau's IEP continue into fourth grade.

Mr. Hamrick testified that another IEP was created later in Oregon without his knowledge. Ms. Hamrick did not advise him about the IEP, and the IEP itself listed Ms. Hamrick and a "Christopher Maitlen" as Beau's parents.[11] The IEP did not list Mr. Hamrick as a parent.

The IEP indicated that Beau was "slow" and unable to keep up with his class and provided that he spend certain time in special sessions away from his regular class. The IEP caused Mr. Hamrick concern because it required Beau to miss time from his regular classes.

<u>Beau's Education, Therapy, and Medication</u>

Mr. Hamrick testified that during a visit, Beau told him "his mom [was] medicating him so that he could perform at school."[12] Beau "seemed excited to be away from the medication" during the visit.

Mr. Hamrick later called Ms. Hamrick to learn about what medication(s) Beau was taking. Ms. Hamrick acknowledged that Beau had been given medication because he was "not staying in his seat at school." Mr. Hamrick asked Ms. Hamrick to fax or e-mail

---

measurable annual goals, benchmarks, and short-term objectives, a statement of the special education and related services the child will receive, and a statement of the extent to which the child will not participate in regular education programs. (20 U.S.C. § 1414(d)(1)(A).)" (*In re Angela M.* (2003) 111 Cal.App.4th 1392, 1397, fn. 2.)

[9] Ms. Hamrick, however, argued that she had initiated Beau's IEP.

[10] Presumably, referring to Beau's school or the local education agency.

[11] Mr. Hamrick believed Maitlen was Ms. Hamrick's boyfriend.

[12] Mr. Hamrick did not testify as to the date of this visit. However, Ms. Hamrick testified that she began medicating Beau in April 2014, so this visit was presumably sometime after April 2014.

him the name of Beau's doctor and medications he was taking. Ms. Hamrick did not accommodate the request.

Mr. Hamrick contacted Beau's school. Officials from the school told him that the school does not provide Beau with medication, and that he would need to speak to Beau's mother. The school officials indicated that they were given forms "to fill out by doctors … and those reports would say … what the child was doing." But when Mr. Hamrick asked to see the reports, they "kept telling [him] to ask the mother."

Mr. Hamrick testified that Beau showed "a great deal of interest in growing educational-wise [*sic*] … [b]ut he seems disappointed that he has to take medication." Mr. Hamrick was concerned that Beau was "following the same path" as his older brother, who did not graduate from high school. Specifically, Mr. Hamrick wanted Beau involved in "after-school curriculum" to better prepare him to graduate from high school. !(6 RT 1129)! Mr. Hamrick also wanted to work with Beau outside the classroom.[13]

Mr. Hamrick said that he hoped Ms. Hamrick could "focus on herself and get things under control and allow Beau to come down here [to Stanislaus County with Mr. Hamrick] for at least a year. Let's get his schooling taken care of and bring him up-to-date and let him move on with the rest of his class. Because this kid shows high potential of being … qualified to do that."

Ms. Hamrick, who appeared without counsel, cross-examined Mr. Hamrick and asked if he was aware Beau had been diagnosed with ADHD.[14] Mr. Hamrick testified that he was not aware Beau had been diagnosed with ADHD.

---

[13] Mr. Hamrick's apparent concern for his son and his education is admirable and refreshing. This opinion is not a reflection of Mr. Hamrick's (or Ms. Hamrick's) ability to parent their children.

[14] Ms. Hamrick testified that she first learned Beau might have ADHD three or four years before the May 2014 hearing.

*Ms. Hamrick's Testimony*

Ms. Hamrick acknowledged that she had been medicating Beau since the first week of April 2014. Beau was 10 at the time. Initially, Beau was only taking "Clonidine."[15] Ms. Hamrick testified that Clonidine[16] is commonly used for blood pressure but can also "help[] to take the hyper out of ADD."[17] Beau had also begun taking Adderall on April 26, 2014.[18]

Ms. Hamrick had sought the medication for Beau because he had been in therapy and his teacher conveyed "some difficulties that he was experiencing in class." Ms. Hamrick initially testified that that she was not observing those same "difficulties" at home. Later, however, Ms. Hamrick testified that she observed Beau begin to have trouble with chores, memory and focus.

Ms. Hamrick also testified that Beau had been in therapy with a clinical counselor since January 2014. Ms. Hamrick had Beau begin counseling because his teacher indicated that he demonstrated a lack of organization and attention span.

Ms. Hamrick acknowledged that she had not informed Mr. Hamrick beforehand that she was taking Beau to a medical professional to have ADHD medication prescribed. Ms. Hamrick also admitted that she had never informed Mr. Hamrick that Beau was taking Adderall, and the present hearing was the first time Mr. Hamrick would have

---

[15] Ms. Hamrick testified that she did not know how to spell this medication.

[16] "Clonidine is a drug approved by the Federal Drug Administration to control high blood pressure. Some doctors, however, prescribe Clonidine to treat ADHD in children because of the calming effect of the medication …." (*State v. Prater* (Tenn.Crim.App. 2003) 137 S.W.3d 25, 27–28.)

[17] Presumably, Ms. Hamrick misspoke and meant to say "ADHD."

[18] Adderall is "an addictive, mind-altering stimulant" used to manage attention deficit disorder. (*People v. Beaty* (2010) 181 Cal.App.4th 644, 656.)

heard about it.  And Ms. Hamrick did not recall ever telling Mr. Hamrick that Beau was in therapy.[19]

Ms. Hamrick testified that Beau was no longer behind in school in "any way, shape, or form."

*Trial Court's Ruling*

The trial court issued a ruling entitled "TENTATIVE DECISION."  The court concluded that Mr. Hamrick had "essentially presented only his claims and allegations without any supporting evidence."  The "TENTATIVE DECISION" also contained several orders at the end, including one denying Mr. Hamrick's request to modify the existing custody order.

Mr. Hamrick now challenges the court's denial of his request to modify the custody order.

## ANALYSIS

By seeking additional time of physical control[20] over Beau, Mr. Hamrick sought to modify an existing joint custody order.  To obtain such a modification, Mr. Hamrick needed to show "that the best interest of the child requires modification … of the order."[21]  (§ 3087.)  As the party seeking relief, Mr. Hamrick bore the burden of proof on

---

[19] We are troubled by Ms. Hamrick's clear violations of the court's order to inform Mr. Hamrick of medical appointments.  Mr. Hamrick has the right to be informed about *all* of the appointments his children have with health care professionals and the treatment they receive.  And these particular appointments involved important parental decisions like whether Beau should see a therapist, or take "mind-altering" (*People v. Beaty*, *supra*, 181 Cal.App.4th at p. 656) medications.  We believe Ms. Hamrick's conduct may be sanctionable.

[20] There is a distinction between physical custody of a child and physical control of a child.  (See § 3084.)  Even when the parents have joint physical custody, only one parent usually has physical control over the child at any given time.

[21] The trial court repeatedly indicated that it was Mr. Hamrick's burden to show "to show a material change in circumstance since the prior, most recent custody order." We doubt Mr. Hamrick was required to make such a showing.  "The changed circumstance rule does not apply to a modification request seeking a change in the

this issue.  (Evid. Code, § 500; Cal. Rules of Court, rule 5.2(d); cf. *In re Marriage of Mehlmauer* (1976) 60 Cal.App.3d 104, 108–109.)[22]  The trial court concluded Mr. Hamrick failed to carry his burden and denied Mr. Hamrick's request, leaving the preexisting child custody order in effect.

Mr. Hamrick's sole argument[23] on appeal is that there was no substantial evidence supporting "the trial court's determination that [Mr. Hamrick] failed to present sufficient facts to establish a material change of circumstances.…"  Specifically, Mr. Hamrick apparently contends that there was a lack of evidence concerning whether the medical

---

parenting … schedule.  [Citatons.]" (*In re Marriage of Lucio* (2008) 161 Cal.App.4th 1068, 1077.)  Here, Mr. and Ms. Hamrick shared legal and physical custody of Beau, and Mr. Hamrick did not seek to change the joint custody aspect of the July 2011 order. Instead, Mr. Hamrick sought a change in the parenting schedule such that Beau would spend the school year with him.  Courts have observed that when a parent seeks a change in the parenting schedule, but does not seek a change in custody from joint to sole or sole to joint, the changed circumstance rule does not apply.  (See *ibid.*; see also *Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1379 [court was unaware of "any published California case in which a court has held that the changed circumstance rule applies to a request to modify the allocated parenting time, where a preexisting joint custody order was in place and custody was not at issue"].)

However, Mr. Hamrick did not argue to the trial court that he need not show changed circumstances even though the court indicated throughout the hearing that it believed such a showing was necessary.  (Cf. *In re Riva M.* (1991) 235 Cal.App.3d 403, 411–412 [litigant waived issue of court applying incorrect standard by failing to raise the point in the trial court].)  Nor does Mr. Hamrick argue on appeal that the court erred in applying the changed circumstance standard.  Therefore, we must consider the issue forfeited.

Nothing in this opinion prevents Mr. Hamrick from seeking a change to the placement schedule and arguing that the changed circumstances rule does not apply.

[22] Thus, while he likely did not have a burden to show changed circumstances (see fn. 21, *supra*,) he *did* have a burden to show that a change to the existing order would be in Beau's best interest.

[23] Though Mr. Hamrick's opening brief spans 23 pages, several portions are repeated verbatim multiple times.

treatment Beau was receiving (e.g., Adderall, Clonidine and therapy) was appropriate for his alleged ADHD.

This argument hinges on an incorrect understanding of the standard of review. While the substantial evidence test applies when the *respondent* bore the burden of proof below, a different standard applies when the *appellant* bore the burden of proof and the finder-of-fact concludes the appellant failed to carry his or her burden. (See *In re. I.W.* (2009) 180 Cal.App.4th 1517, 1528.)

> " 'In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment.... [¶] Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." [Citation.]' [Citation.]" (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838.)

Given this standard of review, it is not enough for Mr. Hamrick to simply identify a lack of evidence on a particular issue. Since Mr. Hamrick bore the burden of proof below, his task on appeal was not to show that certain evidence was lacking, but instead to show that the evidence that *was* adduced *compels* a different ruling. (Cf. *Dreyer's Grand Ice Cream, Inc*. *v. County of Kern*, *supra*, 218 Cal.App.4th at p. 838.) He makes no such argument on appeal. We therefore reject his challenge to the court's order.

## DISPOSITION

The order is affirmed. Each party shall bear their own costs on appeal.

_____
POOCHIGIAN, Acting P.J.

WE CONCUR:


_____
FRANSON, J.


_____
SMITH, J.