Filed 2/5/24  In re Ayden F. CA2/7

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re AYDEN F., a Person Coming Under the Juvenile Court Law. | B319898 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LORENA V.,<br><br>Defendant and Appellant. | (Los Angeles County Super Ct. No. 21CCJP05595A) |

APPEAL from orders of the Superior Court of Los Angeles County, D. Zeke Zeidler, Judge.  Affirmed.

Janelle B. Price, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel for Plaintiff and Respondent.

# INTRODUCTION

Lorena V. appeals from the juvenile court's jurisdiction findings under Welfare and Institutions Code section 300, subdivision (b),[1] and disposition orders declaring her seven-year-old son Ayden F. a dependent child of the court and removing him from her physical custody.  Lorena contends substantial evidence did not support the court's jurisdiction findings or disposition orders.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *A School Bus Driver Finds Ayden Running Down the Street Naked, and the Juvenile Court Detains Ayden*

On October 25, 2021 a school bus driver found Ayden, a severely autistic seven-year-old, "running up and down the street" with "no shoes or clothes on."  The bus driver walked Ayden back to his home, knocked on the front door, and called for someone to answer, but received no response.  The bus driver entered the house and knocked on a locked bedroom door, and a man opened the bedroom door and asked where Ayden was.  The following day, a social worker from the Los Angeles County Department of Children and Family Services went to Ayden's home to interview Lorena.  The social worker smelled "a strong odor of alcohol" when Lorena greeted her.  Lorena denied she was neglecting Ayden and made conflicting statements about where she was the previous morning.

---

[1] Statutory references are to the Welfare and Institutions Code.

Lorena said Ayden had "developmental retardation" and the "mentality" of a two-year-old. According to Lorena, Ayden was "always supervised," either by his babysitter or his adult sister, Briana W. Lorena denied she had drunk any alcohol, but said she had taken an over-the-counter medication for common colds because she was sick. Lorena subsequently failed to show up for a drug and alcohol test, and a few days later she tested positive for amphetamine and marijuana. Lorena explained that she took Adderall[2] for attention deficit hyperactivity disorder and that she ate edible marijuana the weekend before the drug test.

Michael F., Ayden's father, who did not live with Lorena, told the social worker that Lorena did not give Ayden "proper attention." Michael described Lorena's demeanor when she drank alcohol and expressed his concern about Ayden's weight, which in 14 months increased from 120 pounds to 200 pounds. School personnel reported to the social worker that they sometimes smelled alcohol when Lorena spoke to them and that they often heard Lorena slur her speech. Several school employees also said that they had difficulty reaching Lorena to talk about Ayden's frequent episodes of diarrhea and that Lorena exacerbated Ayden's digestion problems.

The social worker asked Lorena to schedule a Child and Family Team meeting. Lorena said she did not "see the point" of

---

[2] "Adderall is the brand name of an amphetamine drug commonly prescribed to treat the symptoms of attention deficit disorder." (*People v. Tseng* (2018) 30 Cal.App.5th 117, 123, fn. 13, trademark symbol omitted; see *In re B.E.* (2020) 46 Cal.App.5th 932, 936.) "Like medicinal marijuana, Adderall is a controlled substance (a derivative of amphetamine, and a schedule II drug) and must be used under a doctor's supervision and on a demonstrated basis of need. It is, however, often abused." (*People v. Beaty* (2010) 181 Cal.App.4th 644, 656.)

having such a meeting because Ayden had only escaped from the house once.[3]

On December 8, 2021 the Department filed a petition under section 300, subdivision (b)(1), alleging in three counts Lorena and Michael endangered Ayden and placed him at substantial risk of serious physical harm. The Department alleged (1) that Lorena had a history of substance abuse and was a current abuser of amphetamine, alcohol, and marijuana, which rendered her incapable of supervising Ayden and providing regular care for him and that Michael knew about Lorena's substance abuse but failed to protect Ayden by allowing him to remain in her care; (2) Lorena had limited ability to provide appropriate care and supervision of Ayden, who was autistic and developmentally delayed, as evidenced by the incident where the bus driver found Ayden alone and running naked in the street; and (3) Michael was unwilling and unable to provide Ayden with ongoing care and supervision. The court detained Ayden and placed him in foster care under the Department's supervision.

B. *The Department Investigates Further; Lorena Struggles with Her Substance Abuse*

Over the next two and a half months, the Department continued to investigate and monitor the family. Lorena denied

---

[3] A "'[c]hild and family team'" consists of "individuals who are convened by the placing agency and who are engaged through a variety of team-based processes to identify the strengths and needs of the child or youth and their family, and to help achieve positive outcomes for safety, permanency, and well-being." (§ 16501, subd. (a)(4); see *In re N.R.* (2023) 15 Cal.5th 520, 534, fn. 4.) Lorena eventually participated in a meeting in January 2022.

she had a substance abuse problem and minimized how often she drank alcohol. When the social worker asked Lorena about her arrest in 2020 for driving under the influence (the arrest report indicated she drank four beers before driving), Lorena said she was not really "driving" the car but was merely "moving" it because "it was illegally parked." Lorena also maintained her version of the October 2021 incident, denying that Ayden was out in the street or that the bus driver brought him home. During a walk-through of Lorena's home, the social worker smelled marijuana and saw marijuana on a dresser in a room Lorena said her adult son Dominic W. occupied.

Michael reported that, at times when he dropped off Ayden with Lorena or picked up Ayden from Lorena, he could tell by her behavior she had been drinking. Michael was concerned Lorena often gave Ayden "what he wanted to eat," such as "four to five yogurts in one sitting." A physical examination of Ayden in December 2021 revealed he was four feet nine inches tall and weighed 215 pounds. Ayden's medical records described his conditions as "severe obesity" and "severe developmental delay."

A Department assessor concluded that, although Ayden was seven years old, he behaved "as a child much younger than his stated age." Ayden's foster mother told the assessor that Ayden was not toilet trained and could not perform the activities of daily living without assistance. The foster mother emphasized Ayden could not be left unsupervised "for even a minute" because of the "severity of his impulsive behaviors" and because he did not understand those behaviors "are dangerous." An assessor from a regional center observed that Ayden "does not always respond appropriately" to the word "no" and that, besides "come

here" and "sit down," Ayden "does not respond to any other instructions."[4]

In January 2022 Lorena failed to complete a substance abuse treatment program because she missed classes, was often late to classes, and at times did not show up for drug testing or provided a diluted sample. The following month Lorena attended a virtual substance abuse treatment program and, after a few weeks, tested positive for amphetamine. Lorena's substance abuse counselor later informed the social worker that Lorena missed her counseling session and had not returned any of the counselor's phone calls.

C.    *The Court Sustains the Petition and Removes Ayden*

At the combined jurisdiction and disposition hearing, the juvenile court sustained the allegations in the petition, as amended, and declared Ayden a dependent child of the court. At disposition the court found that the Department had provided reasonable services to prevent removal and that no available services existed to prevent further detention. The court found that Lorena "has unresolved substance abuse issues, which clearly are connected to her lack of follow-up regarding [Ayden's] medical care," and that Michael could not care for Ayden "at this time." The court removed Ayden from Lorena and Michael and

---

[4]    A regional center is a private nonprofit community-based organization that contracts with the Department of Developmental Services to coordinate services for individuals with developmental disabilities. (See *Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 486; *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 479, fn. 3.)

6

placed him under the care and supervision of the Department for suitable placement. Lorena timely appealed.[5]

## DISCUSSION

A. *Substantial Evidence Supported the Juvenile Court's Findings Under Section 300, Subdivision (b)*

1. *Applicable Law and Standard of Review*

Section 300, subdivision (b)(1), "provides that a juvenile may be adjudged a dependent of the court when '[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of any of the following: [¶] (A) The failure or inability of the child's parent or guardian to adequately supervise or protect the child. . . . [¶] (D) The inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, *or substance abuse*.'" (*In re N.R.*, *supra*, 15 Cal.5th at pp. 537-538;[6] see *In re R.T.* (2017) 3 Cal.5th 622, 626-627; *In re M.D.* (2023) 93 Cal.App.5th 836, 848; *In re S.F.*

---

[5] Michael did not appeal from the juvenile court's jurisdiction findings or disposition order. During the pendency of this appeal, the court placed Ayden with Michael and transferred the case to the juvenile court in Orange County Superior Court. The transfer does not affect our jurisdiction to resolve this appeal. (See *In re Lisa E.* (1986) 188 Cal.App.3d 399, 404-405.)

[6] The Supreme Court decided *In re N.R.* while this appeal was pending. We gave the parties the opportunity to file supplemental briefs on the effect of that decision on this case. Both sides did.

(2023) 91 Cal.App.5th 696, 712; *In re L.W.* (2019) 32 Cal.App.5th 840, 848.)

"A court 'need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child.' [Citation.] And a parent's "'[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue."' [Citation.] However, "'[t]o establish a defined risk of harm at the time of the hearing, there 'must be some reason beyond mere speculation to believe the alleged conduct will recur.'"'" (*In re S.F.*, *supra*, 91 Cal.App.5th at pp. 712-713; see *In re J.A.* (2020) 47 Cal.App.5th 1036, 1048; *In re L.W.*, *supra*, 32 Cal.App.5th at p. 849.)

"'"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings . . . , we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court."'"'" (*In re S.F.*, *supra*, 91 Cal.App.5th at p. 713; see *In re L.W.*, *supra*, 32 Cal.App.5th at p. 848.) "'The parent has the burden on appeal of showing there is insufficient evidence to support the juvenile

court's order.'" (*In re L.B.* (2023) 88 Cal.App.5th 402, 411-412; see *In re M.C.* (2023) 88 Cal.App.5th 137, 151.)[7]

>     2.     *Substantial Evidence Supported the Juvenile*
>            *Court's Finding Lorena's Substance Abuse*
>            *Placed Ayden at Substantial Risk of Serious*
>            *Physical Harm*

Under section 300, subdivision (b)(1)(D), the Department "must establish, as separate elements, that (1) substance abuse (2) makes a parent or guardian unable to provide regular care for a child and (3) this inability has caused the child to suffer serious physical harm or illness or creates a substantial risk of such harm or illness." (*In re N.R.*, *supra*, 15 Cal.5th at p. 558.) The Supreme Court has interpreted section 300, subdivision (b)(1)(D),

---

[7] The Department argues that, because Michael did not appeal from the court's jurisdiction findings against him, Lorena's appeal from the court's findings against her is not justiciable. It is true that a "'jurisdictional finding good against one parent is good against both'" (*In re Briana V.* (2015) 236 Cal.App.4th 297, 308; see *In re M.C.*, *supra*, 88 Cal.App.5th at pp. 150-151 ["'[b]ecause the juvenile court assumes jurisdiction of the child, not the parents, jurisdiction may exist based on the conduct of one parent only'"]) and that, "where jurisdictional findings have been made as to both parents but only one parent brings a challenge, the appeal may be rendered moot" (*In re D.P.* (2023) 14 Cal.5th 266, 283). But "a case is not moot where a jurisdictional finding affects parental custody rights [citation], curtails a parent's contact with his or her child [citation], or 'has resulted in [dispositional] orders which continue to adversely affect' a parent.'" (*Id.* at pp. 277-278; see *In re S.F.*, *supra*, 91 Cal.App.5th at p. 712.) Lorena's appeal from the jurisdiction findings is not moot because the findings resulted in a removal order that continues to adversely affect her.

"as assigning the term 'substance abuse' its ordinary meaning—essentially, the excessive use of drugs or alcohol." (*N.R.*, at p. 551; see *ibid.* [neither "a diagnosis by a medical professional" nor "satisfaction of the prevailing criteria for a substance use disorder as specified within the Diagnostic and Statistical Manual of Mental Disorders (DSM)" is "essential under section 300(b)(1)(D)"].)

Substantial evidence supported the court's finding Lorena used drugs and alcohol excessively. Multiple people who interacted with Lorena, including Michael, school employees, and the social worker who interviewed Lorena the day after the bus driver found Ayden in the street, reported that Lorena smelled of alcohol or slurred her words when she spoke. Lorena tested positive for marijuana and amphetamine in early November 2021, shortly after Ayden escaped from the home, and tested positive for amphetamine approximately two weeks before the jurisdiction hearing. And, even after the court detained Ayden, Lorena appeared intoxicated during two virtual visits with him.

Substantial evidence also supported the juvenile court's finding Lorena's substance abuse made her unable to provide regular care for Ayden. School personnel described Ayden's home care as woefully inadequate. Ayden attended school wearing clothes and shoes stained with feces, and Lorena sometimes failed to meet Ayden at the bus stop or took hours to pick him up from school when his diarrhea was dripping onto his shoes and clothes. And while Lorena gave many (inconsistent) excuses for how Ayden got out of the house, she failed to ensure Ayden remained safely inside the home. In fact, the evidence suggested that Lorena was not even home when Ayden ran out of the house

10

and that she entrusted his care to someone else (probably Dominic) who was in his bedroom behind a locked door.

In addition to failing to ensure Ayden's safety and maintain his personal hygiene, Lorena contributed to, or at least failed to prevent, Ayden's rapid and unhealthy weight gain. At 215 pounds, Ayden's body mass index was above the 97th percentile for boys his age, which created serious health risks. As Ayden's physician stated, Ayden had a "very high" body mass index. Yet, Lorena did not take steps to improve Ayden's diet. Ayden's teacher regularly observed chocolate milk (even though Ayden was lactose-intolerant) and sugary drinks in Ayden's lunchbox. School personnel frequently had difficulty reaching Lorena to discuss proper care for Ayden. In less than three months, from detention to shortly before the jurisdiction hearing, Ayden lost 15 pounds under the care of his foster mother, who gave him balanced meals and healthy snacks.

And substantial evidence supported the juvenile court's finding Lorena's inability to provide Ayden regular care created a substantial risk of harm. At the time of the jurisdiction hearing, Lorena was still struggling with her substance abuse problem. She missed classes and drug testing required by the Department-approved substance abuse treatment programs. (See *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1384 ["a missed drug test, without adequate justification, is 'properly considered the equivalent of a positive test result'"], disapproved on another ground in *In re N.R.*, *supra*, 15 Cal.5th at p. 560, fn. 18.) Shortly before the jurisdiction hearing, Lorena missed her counseling session and stopped communicating with her counselor.

Lorena also remained in denial about her substance abuse problem and how it impacted Ayden's health and safety. (See

*In re K.B.* (2021) 59 Cal.App.5th 593, 604-605 ["A court is entitled to infer past conduct will continue where the parent denies there is a problem."], disapproved on another ground in *In re N.R.*, *supra*, 15 Cal.5th at p. 560, fn. 18; *In re D.B.* (2020) 48 Cal.App.5th 613, 622 ["Realizing conduct needs improvement is a first step to improvement."].) Lorena's failure to acknowledge her substance abuse led her to leave Ayden unsupervised and placed Ayden at substantial risk of physical harm. (Cf. *K.B.*, at pp. 602-603 [where the mother left her children "largely unsupervised every evening," her "failure to supervise [was] the direct and decisive evidence of substantial risk of harm"].) Lorena's 2020 arrest for driving under the influence (and her attempt to downplay the seriousness of that conduct) was further evidence her excessive drinking and poor judgment put Ayden's safety at risk. (See *In re L.W.*, *supra*, 32 Cal.App.5th at p. 850 ["recent DUI arrests and conviction for reckless driving provide a nexus between [the mother's] substance abuse and a substantial risk of future harm to" her child].)

Finally, Ayden's very young mental age supported the court's conclusion Lorena's substance abuse placed him at substantial risk of serious physical harm. (See *In re N.R.*, *supra*, 15 Cal.5th at p. 559 ["a child's youth and maturity level can bear upon the care that the child may require and whether a parent's or guardian's substance abuse places the child at substantial risk of serious physical harm"].) As Lorena informed the social worker, Ayden had the mentality of a two-year-old child and required constant supervision and care. Ayden's caregiver emphasized that Ayden had "no sense of safety," behaved impulsively, and did not appreciate the risks of his actions, such as running out of the house alone. Because Ayden required such

12

a high level of care, Lorena's unresolved substance abuse problem posed an even higher level of risk for Ayden than it would for a child who had higher intellectual functioning or understood what was unsafe. (See *id.* at p. 558 ["It is reasonable for courts to infer that very young children require a substantial degree of close supervision."].)

Lorena argues that, although "there was a momentary lapse of supervision on October 25, 2021, there was no evidence that this was a recurrent issue." Lorena ignores the evidence and the juvenile court's finding that, in addition to her poor judgment, her unresolved substance abuse put Ayden at risk. As discussed, Lorena's excessive drinking and drug use compromised her ability to stay vigilant in ensuring Ayden stayed safe and followed a strict diet to bring his weight down; in fact, she did the opposite, by giving him sugary dairy products he could not easily digest. In addition, a neighbor reported observing adults from Lorena's home look for Ayden outside the house on a previous occasion. As the Department points out in its supplemental brief, Lorena "was unclear" about which day of the week the bus driver found Ayden naked and alone in the street (Lorena stated it was a Sunday, even though the school bus only operated on weekdays). Lorena's apparent confusion about when Ayden ran out of the house supported the reasonable inference Ayden's escape from the home was not a one-time occurrence. (See *In re K.B.*, *supra*, 59 Cal.App.5th at p. 600 ["Without supervision, nothing protects children from a world of serious and sudden danger."].)

Lorena's assertion she had a "valid prescription" for Adderall is contrary to the evidence that, as of October 2021, her psychiatrist no longer prescribed the drug for her. Indeed,

13

Lorena told the social worker in early January 2022 she no longer took Adderall; yet she tested positive for amphetamine the following month. Though Ayden's babysitter said she had never seen Lorena under the influence of drugs or alcohol, multiple witnesses, including the school secretary (who had 10 encounters with Lorena during the month before the Department filed the section 300 petition), reported frequently observing Lorena slurring her words and smelling of alcohol. (See *In re K.B.*, *supra*, 59 Cal.App.5th at p. 604 ["father points to statements by the children and family members that they had not seen the father under the influence; but this does not nullify other evidence in the record"]; see also *In re I.J.* (2013) 56 Cal.4th 766, 773 ["'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings . . . , we determine if substantial evidence, contradicted or uncontradicted, supports them.'"]; *In re L.B.*, *supra*, 88 Cal.App.5th at pp. 411-412 [same].)

Lorena argues she provided regular care for Ayden because she gave him food, clothing, and shelter. Lorena, however, overlooks that the kinds and portions of food she gave Ayden caused him to gain so much weight his doctor had to test for complications from obesity, that Ayden's clothing was stained with feces, and that Ayden ran out of the home when Lorena left him unsupervised. Lorena asserts there was no evidence that, on the day the bus driver found Ayden in the street, she "was in the home let alone responsible for [his] elopement due to [her] substance abuse." As discussed, however, the social worker smelled a strong odor of alcohol when she spoke to Lorena the day after Ayden escaped, and Lorena gave the implausible explanation that the social worker had actually smelled cold

14

medicine.[8]  The juvenile court reasonably inferred Lorena's
drinking led to the dangerous lapse in supervision.  (See *In re
N.R.*, *supra*, 15 Cal.5th at p. 559 [courts may "discern an inability
to provide regular care and a substantial risk of serious physical
harm or illness from the evidence that has been introduced in a
particular case . . . and the reasonable inferences that can be
drawn from this evidence"].)[9]

### B.  *Substantial Evidence Supported Removal*

#### 1.  *Applicable Law and Standard of Review*

Section 361, subdivision (c)(1), provides:  "'A dependent
child shall not be taken from the physical custody of his or her
parents . . . unless the juvenile court finds clear and convincing
evidence' that '[t]here is or would be a substantial danger to the
physical health, safety, protection, or physical or emotional

---

[8]      Lorena also explained the odor of alcohol by claiming she
used rubbing alcohol to clean the feces on Ayden's wall, an
equally dubious claim.

[9]      Because substantial evidence supported the juvenile court's
finding Lorena's substance abuse placed Ayden at risk of serious
physical harm, we do not decide whether substantial evidence
supported the court's finding Lorena's limited ability to care for
and supervise Ayden placed him at risk of serious physical harm.
(See *In re M.D.*, *supra*, 93 Cal.App.5th at p. 852 ["'[w]hen a
dependency petition alleges multiple grounds for its assertion
that a minor comes within the dependency court's jurisdiction, a
reviewing court can affirm the juvenile court's finding of
jurisdiction over the minor if any one of the statutory bases for
jurisdiction that are enumerated in the petition is supported by
substantial evidence'"].)

well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody.'" (See *In re M.D.*, *supra*, 93 Cal.App.5th at p. 856; *In re I.R.* (2021) 61 Cal.App.5th 510, 520.) "A removal order is proper if based on proof of parental inability to provide proper care for the child and proof of a potential detriment to the child if he or she remains with the parent. The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re Lana S.* (2012) 207 Cal.App.4th 94, 105, internal quotation marks and citations omitted.) "The court may consider a parent's past conduct as well as present circumstances." (*In re L.O.* (2021) 67 Cal.App.5th 227, 245, internal quotation marks omitted.)

"We review a dispositional order removing a child from a parent for substantial evidence, '"keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence."' [Citation.] '[A]ppellate review of the sufficiency of the evidence in support of a finding requiring clear and convincing proof must account for the level of confidence this standard demands.' [Citation.] In applying this standard of review, 'the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true.' [Citation.] We view the record in the light most favorable to the prevailing party and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence."

16

(*In re M.V.* (2022) 78 Cal.App.5th 944, 960; see *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995; *In re I.R.*, *supra*, 61 Cal.App.5th at p. 520.)  As in an appeal from the juvenile court's jurisdiction findings, "the appellant bears the burden of showing "'there is no evidence of a sufficiently substantial nature'" to support the dispositional removal order."  (*In re L.O.*, *supra*, 67 Cal.App.5th at p. 245; see *In E.E.* (2020) 49 Cal.App.5th 195, 206.)

2.     *Substantial Evidence Supported the Court's Order Removing Ayden from Lorena*

Substantial evidence supported the juvenile court's finding by clear and convincing evidence that returning Ayden to Lorena's home would create a substantial danger to his physical health, safety, protection, or physical or emotional well-being.[10] The same evidence that supported the court's jurisdiction findings also supported the court's removal order.  (See § 361, subd. (c)(1); *In re T.V.* (2013) 217 Cal.App.4th 126, 135.)  As discussed, by the combined jurisdiction and disposition hearing,

---

[10]     The Department argues Lorena forfeited her challenge to Ayden's removal because she did not object to removal or seek custody of Ayden at the disposition hearing.  Because Lorena contends substantial evidence did not support the court's removal order, her failure to raise the issue in the juvenile court does not preclude her from raising it on appeal.  (See *In re Cole L.* (2021) 70 Cal.App.5th 591, 605, fn. 11 ["A challenge to the sufficiency of the evidence on an issue as to which the [child protective agency] has the burden of proof is not forfeited by a parent's failure to object in the juvenile court."]; *In re R.V.* (2012) 208 Cal.App.4th 837, 848 [a parent's challenge to "the court's dispositional order on the ground of insufficient evidence . . . is not forfeited even if not raised in the juvenile court"].)

17

Lorena had yet to acknowledge her substance abuse problem (claiming that she no longer took Adderall and that she drank alcohol only when someone else was taking care of Ayden). Lorena's inconsistent explanations to the social worker about the frequency of her drinking confirmed she was in denial about how much she actually drank. That she failed to complete the Department-approved substance abuse treatment programs (whether for lack of attendance or inconsistent testing) further supported the court's finding.

Lorena also failed to acknowledge her role in placing Ayden in grave danger when she left him unsupervised that October morning (by sticking to a version of the events the bus driver's account contradicted). The social worker tried to explain to Lorena that Ayden could have been killed in the middle of the street, but Lorena insisted she left him in the front yard for only a few minutes while she went inside the house to retrieve a mask. The juvenile court reasonably concluded that, without fully accepting responsibility for placing Ayden at risk of serious physical harm, Lorena would continue to abuse drugs and alcohol, which would lead to further lapses in supervision. (See *In re M.D.*, *supra*, 93 Cal.App.5th at pp. 857-858 ["A fact finder could reasonably conclude, based on the evidence of [the father's] habitual parenting practices, coupled with his ongoing denial and lack of insight, that it was highly probable returning [the child] to his care put her at risk of physical danger."]; *In re A.F.* (2016) 3 Cal.App.5th 283, 293 ["In light of [the] mother's failure to recognize the risks to which she was exposing the minor, there was no reason to believe the conditions would not persist should the minor remain in her home."]; *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1657-1658 [because the mother was "in denial about both her substance abuse and the importance of

18

medical treatment of her mental problems," there was "little reason to believe that if [the child] were returned home, . . . the 'downhill spiral' . . . would not reoccur, placing [her] in danger"]; see also *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge."].)  In light of Ayden's special needs and developmental age, a lapse in supervision would be all the more dangerous.  (See Seiser & Kumli, California Juvenile Courts Practice and Procedure (2022) § 2.126[2][a] [a child's special needs are factors in the juvenile court's decision whether to remove a child from a parent with substance abuse problems].)

In addition, as the juvenile court found, Lorena's substance abuse interfered with her ability to follow up with medical care for Ayden's weight and digestion problems.  Ayden's foster mother expressed her concern about the food Lorena fed Ayden during visits because he always returned to his foster home with "diarrhea and watery stool from his visits."  The juvenile court could reasonably infer that, even after the court detained Ayden, Lorena had difficulty following medical advice on maintaining a healthy diet for Ayden.[11]

Substantial evidence also supported the juvenile court's findings that the Department provided reasonable services and that there were no reasonable means to protect Ayden without removing him from Lorena.  The Department referred Lorena to substance abuse treatment programs that included drug testing, but Lorena did not complete them satisfactorily.  Lorena continued to hide the amount and frequency of her alcohol consumption and the fact Dominic, who left remnants of

---

[11]    Lorena was well aware of Ayden's lactose intolerance, and health care staff instructed her to give Ayden "lactose-free" foods.

19

marijuana use in his room, resided in the home. Lorena's evasiveness made it impossible for the Department or the court to trust she would stay sober or refrain from leaving Ayden in the care of someone who also used drugs or drank during the day.[12] (See *In re E.E.*, *supra*, 49 Cal.App.5th at p. 212 ["failure to engage in services . . . such as failing to cooperate with the social services agency, being less than forthcoming during interviews, or missing drug tests" can "support removal from parental custody at disposition"].)

Lorena asserts that, except for one drug test, she tested negative and that she completed various programs, which she claims demonstrated her ability to safely care for Ayden. The record does not support Lorena's assertion. As discussed, in the weeks leading up to the disposition hearing, Lorena failed to complete a substance abuse treatment program (due to missed tests) and a few weeks later tested positive for amphetamine. While Lorena submitted certificates of completion from online programs for parenting and substance abuse, those programs had not been approved by the Department, and nothing in the certificates indicated Lorena was testing clean. (See *In re Natalie A.* (2015) 243 Cal.App.4th 178, 186 [father's "past substance abuse and failure to complete a drug treatment program" supported the juvenile court's finding his drug abuse "affected his ability to adequately care for his very young children"]; cf. § 300.2, subd. (a) ["[s]uccessful participation in a treatment

---

[12] On the day after Ayden ran into the street, the school principal called Lorena and heard Dominic in the background speaking with slurred speech. On that same day, Dominic told the social worker that he had been drinking and was "buzzed."

20

program for substance abuse may be considered in evaluating the home environment"].)

Finally, Lorena argues the Department should have offered her respite care,[13] which the foster mother received to help her take care of Ayden. But in 2021 Lorena received respite care (40 hours per month) from a provider while she had physical custody of Ayden. She also received caregiving support from Briana and a babysitter. Nevertheless, an assessor observed that Lorena "continue[d] to have difficulties with organization, time management, and overseeing Ayden's daily schedule." In any event, the record supported the court's implied finding that, even with additional childcare assistance, Lorena's behavior would still endanger Ayden's physical health and safety because of her unacknowledged and unresolved substance abuse problem.

---

[13] Respite care is designed to give parents a break from caring for a disabled child. (*Harbor Regional Center v. Office of Administrative Hearings* (2012) 210 Cal.App.4th 293, 303; see § 4690.2, subd. (a)(3) [one of the purposes of respite services is to "[r]elieve family members from the constantly demanding responsibility of caring for" a disabled person].)

## DISPOSITION

The juvenile court's jurisdiction findings and disposition order are affirmed.

SEGAL, Acting P. J.

We concur:

FEUER, J.

MARTINEZ, J.